Andrew D. Skale (SBN 211096)
askale@mintz.com
Wynter L. Deagle (SBN 296501)
wldeagle@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Attorneys for Plaintiffs
LIGHTS OUT HOLDINGS, LLC
and SHAWNE MERRIMAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIGHTS OUT HOLDINGS, LLC., a California Limited Liability Company, and SHAWNE MERRIMAN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>UNDER ARMOUR, INC., a Maryland Corporation<br><br>Defendants. | Case No. '17CV0194 GPC JLB<br><br>**COMPLAINT FOR:**<br><br>**1) TRADEMARK INFRINGEMENT;**<br>**2) UNFAIR COMPETITION UNDER THE LANHAM ACT;**<br>**3) COMMON LAW UNFAIR COMPETITION AND CAL. BUS. & PROF. CODE § 17200**<br>**4) FALSE ENDORSEMENT; AND**<br>**5) BREACH OF CONTRACT;**<br><br>**DEMAND FOR JURY TRIAL** |

Lights Out Holdings, LLC ("Lights Out Holdings") and Shawne Merriman (together, "Plaintiffs") bring this suit for trademark infringement, federal unfair competition, common law unfair competition, violations of the California Business and Professions Code, false endorsement, and breach of contract against Under Armour, Inc. ("Under Armour" or "Defendant") and alleges as follows:

**THE PARTIES**

1. Plaintiff SHAWNE MERRIMAN is a resident and citizen of the State of California. Mr. Merriman has substantial real estate and business holdings in San Diego, California.

2. Plaintiff LIGHTS OUT HOLDINGS, LLC is a California limited liability company with its principal place of business in Los Angeles, California.

3. Upon information and belief, UNDER ARMOUR, INC. is a Maryland corporation with its principal place of business in Baltimore, Maryland.

4. Defendant's actions alleged herein were those of itself, its agents and/or licensees.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1138(a) & (b), and 28 U.S.C. § 1367(a).

6. This Court has jurisdiction over the federal trademark infringement claim pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a).

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

8. Personal jurisdiction exists over the Defendant because it conducts substantial business in California and therefore has sufficient contacts such that it would not offend traditional notions of fair play and substantial justice to subject Defendant to suit in this forum. Defendant has purposefully directed its harmful

conduct alleged below at this forum, and purposefully availed itself of the benefits of California with respect to the claims alleged herein. A substantial part of the protected intellectual property in this action exists in this district and Defendant has offered the offending goods for sale in this district.

9. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

### Shawne Merriman's Valuable LIGHTS OUT Trademarks

10. Shawne Merriman is a former San Diego Charger NFL football player who turned his passion for football into a nationally recognized brand.

11. After a distinguished collegiate career, Mr. Merriman was a first round selection in the 2005 NFL Draft for the San Diego Chargers. In his first season, Mr. Merriman earned NFL Defensive Rookie of the Year honors. In addition, from 2005-2007, his first three seasons with the Chargers, Mr. Merriman recorded 39½ quarterback sacks and was selected each year to the Pro Bowl and All Pro teams.

12. Mr. Merriman's aggressive and dominant style of play caused the "Lights Out" nickname to continue throughout Mr. Merriman's professional football career. Indeed, Mr. Merriman's on-field successes brought Mr. Merriman's "Lights Out" nickname to fast national (and indeed international) prominence. As such, the name "Lights Out" is readily associated with Shawne Merriman and his successful professional athletic career.

13. Capitalizing on his professional successes, Mr. Merriman saw an opportunity to develop a "Lights Out" brand that could motivate and excite consumers, a brand that could carry a message during and long after his NFL days. To that end, beginning in 2007, Mr. Merriman and Lights Out Holdings have

acquired and used a series of trademarks for "Lights Out" for a wide variety of goods and services.

14. In 2007, Shawne Merriman acquired U.S. Registration No. 2,885,212 ("the '212 LIGHTS OUT Mark") for LIGHTS OUT, along with all trademark rights and the goodwill associated therewith from the prior registrant. Shortly thereafter, he assigned those rights to the company dedicated to further expanding the brand, Plaintiff Lights Out Holdings, LLC. The '212 LIGHTS OUT Mark covers a broad range of apparel.

15. The registration for the '212 LIGHTS OUT Mark is attached as Exhibit A hereto. Attached as Exhibit B is a true and correct copy of the assignment record from the USPTO's TESS online database, listing Lights Out Holdings, LLC as the owner of the '212 LIGHTS OUT Mark. The '212 LIGHTS OUT Mark enjoys a priority date of February 10, 2003, well before Under Armour's first use of "Lights Out." Because of its long-standing registration since September 14, 2004, the '212 LIGHTS OUT Mark became incontestable on September 15, 2010.

16. The '212 LIGHTS OUT Mark enjoys an incontestable federal trademark registration.

17. In 2011, Lights Out Holdings acquired U.S. Registration No. 3,990,916 ("the '916 LIGHTS OUT Mark") for LIGHTS OUT in International Classes 28, 35, 38, and 41. Class 35 of the '916 LIGHTS OUT Mark covers: "Online retail store featuring sporting goods, sports memorabilia, clothing; promoting the goods and services of others through the issuance of product and service endorsements by a sports celebrity, and through advertising appearances for products and services by a sports celebrity." The '916 LIGHTS OUT Mark is attached as Exhibit C hereto. The LIGHTS OUT Mark enjoys a priority date of April 24, 2007, well before Under Armour's first use of "Lights Out." (The '212 LIGHTS OUT Mark and the '916 LIGHTS OUT Mark, are collectively the "LIGHTS OUT Marks").

18. In 2016, Lights Out Holdings applied for a trademark for LIGHTS OUT in International Class 25 for "Footwear" and "athletic footwear." ("the '080 LIGHTS OUT Application Mark"). The application for the '080 LIGHTS OUT Application Mark is attached as Exhibit D hereto. The '080 LIGHTS OUT Application Mark enjoys a priority date of January 27, 2016 and was published for opposition on June 21, 2016 without objection, both well before Under Armour's first use of "Lights Out."

19. Since 2007, and long exceeding Mr. Merriman's March 5, 2013 retirement from the NFL, Lights Out Holdings' line of products bearing the LIGHTS OUT Marks have enjoyed substantial success and popularity, and have been sold by LightsOutBrand.com, ShawneMerriman.com, and other national retailers. Products bearing the LIGHTS OUT Marks have been continuously used and sold and are extremely valuable to Lights Out Holdings. In addition, athletic wear products bearing the LIGHTS OUT Marks are currently the center of a brand partnership with a nationally televised mixed martial arts promotion company. As part of the brand partnership, Lights Out Holdings sponsors apparel for fighters and Shawne "Lights Out" Merriman also makes personal appearances and endorses fights.

## Under Armour's Wrongful Use of the LIGHTS OUT Marks and Under Armour's Breach of the March 2015 Settlement Agreement

20. Upon information and belief, since at least October 30, 2016, Under Armour marketed its new line of athletic footwear featuring professional basketball player Stephen Curry with the name "Curry 3 Lights Out" (the "Curry Lights Out Sneakers"). Indeed, as a result of Under Armour's marketing efforts, numerous athletic footwear blogs have published articles expressly referring to the Curry Lights Out Sneakers with the name "Curry 3 Lights Out." Attached as Exhibit E is an example of the results of Under Armour's marketing efforts.

21. Just some examples of websites that continue to market the "Curry 3 Lights Out" shoe are listed below:

- http://www.currylightsout.com/under-armour-curry-3-pe-lights-out-p-300.html
- http://www.slamonline.com/media/photos/armour-curry-3-lights
- http://www.sneakerfiles.com/under-armour-curry-3-lights/
- http://www.kicksonfire.com/stephen-curry-wears-under-armour-curry-3-lights-out-for-halloween/
- http://www.jordan11lowbreds.com/product17336/mens-under-armour-stephen-curry-3-lights-out-halloween-sneaker-for-sale/
- http://www.curry3.info/under-armour-curry-3/under-armour-curry-3-halloween--lights-out-curry-3-shoes.html
- http://www.luninfest.com/under-armour-curry-3-halloween-lights-out-p-2598.html
- http://sneakerbardetroit.com/under-armour-curry-3-lights-out/
- http://www.nicekicks.com/exclusive-stephen-currys-lights-armour-curry-3-pe/
- http://www.lebron14cheap.com/ua-curry-3-lights-out-for-halloween-blackorangegreen-new-sale-p-3478.html
- http://kenlu.net/2016/11/news-under-armour-curry-3-lights-pe/stephen-curry-lights-out-under-armour-halloween-curry-3-1/
- http://www.kevinhlin.com/cheap-curry-3-halloween-lights-out-curry-3-shoes-p-3066.html
- http://www.cheapjordans2017.com/cheap-shoes20913/cheap-under-armour-curry-3-lights-out-pe-black-orange-green/
- http://retrosole.com/2016/10/31/exclusive-stephen-currys-lights-out-under-armour-curry-3-pe/

22. As part of its marketing efforts, Under Armour also promotes its Curry Lights Out Sneakers through the issuance of product endorsements by a sports celebrity, professional basketball player Stephen Curry. Mr. Curry appears in multiple commercials (including on Under Armour's website) promoting the Curry Lights Out Sneakers. Under Armour also markets and promotes the Curry Lights Out Sneakers through appearances by Mr. Curry.

23. Further, upon information and belief, Under Armour is also marketing the Curry Lights Out Sneakers in a variety of mediums, including through an exclusive mobile "Lights Out" game:







24. Not satisfied with infringing the LIGHTS OUT Marks through the Curry Lights Out Sneakers, Under Armour is also offering for sale a line of shirts bearing the phrase "Hit the Lights," an obvious euphemism which is confusingly similar to the '212 LIGHTS OUT Mark (the "Hit the Lights Shirts"):




25. Under Armour's use of the "Lights Out" for its Curry Lights Out Sneakers and Hit the Lights Shirts is not only is confusingly similar to and infringes on the LIGHTS OUT Marks, it also expressly breaches a prior contract between Under Armour, Lights Out Holdings, and Mr. Merriman.

26. On March 11, 2015, the parties entered into a settlement agreement regarding Under Armour's prior unauthorized use of Plaintiffs' '212 LIGHTS OUT Mark (the "Settlement Agreement"). In this agreement, Under Armour agreed to "cease all use of, and will not use or register in the future, the term LIGHTS OUT as a trademark, service mark, or other source identifier to identify apparel products." Under Armour's new uses of the LIGHTS OUT Mark is a clear violation of the Settlement Agreement.

27. After Plaintiffs learned that Defendant was wrongfully using the LIGHTS OUT Marks, Plaintiffs contacted Defendant. When Plaintiffs demanded that Defendants cease and desist use of the LIGHTS OUT Marks on November 29, 2016, Defendant refused to acknowledge that its conduct was infringing.

28. On information and belief, Under Armour has continued marketing and selling the Curry Lights Out Sneakers and the Hit the Lights Shirts using the LIGHTS OUT Marks up to the present.

29. Despite efforts to negotiate a resolution without litigation, Under Armour has refused to acknowledge its substantial infringement of the LIGHTS OUT Marks. By willfully trading on the recognition of the LIGHTS OUT Marks, Under Armour threatens to undermine the time and money Mr. Merriman and Lights Out Holdings have invested in developing and protecting the LIGHTS OUT Marks. Accordingly, Lights Out Holdings and Shawne Merriman bring this suit to protect their valuable trademark rights and seek recovery for their violation.

## FIRST CAUSE OF ACTION

## TRADEMARK INFRINGEMENT

**(Lights Out Holdings Against Under Armour)**

**(15 U.S.C. §§ 1114, 1125 *et seq*. and Common Law)**

30. Plaintiffs restate and reallege the Paragraphs herein as if set forth fully herein.

31. Lights Out Holdings owns the ’212 LIGHTS OUT Mark, which is a federally registered, incontestable, valid, distinctive, and protectable trademark. Lights Out Holdings has priority of use over the ’212 LIGHTS OUT Mark as to Under Armour.

32. Lights Out Holdings owns the ’916 LIGHTS OUT Mark, which is a federally registered, valid, distinctive, and protectable trademark. Lights Out Holdings has priority of use over the ’916 LIGHTS OUT Mark as to Under Armour.

33. Lights Out Holdings owns the ’080 LIGHTS OUT Application Mark, for which it has applied for a federal registration.

34. Lights Out Holdings owns common law rights associated with its LIGHTS OUT Mark for goods and services associated with the ’212 LIGHTS OUT Mark and the ’916 LIGHTS OUT Mark. Lights Out Holdings has priority of use over its common law use of the LIGHTS OUT Mark as to Under Armour.

35. Under Armour has used the ’212 LIGHTS OUT Mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods in a way that is likely to cause confusion, mistake, or deception as to whether Under Armour has a connection with Plaintiffs, and as to the origin, sponsorship, or approval of Under Armour’s goods.

36. Under Armour has used the ’916 LIGHTS OUT Mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods in a way that is likely to cause confusion, mistake, or deception as to whether Under Armour has a connection with Plaintiffs, and as to the origin, sponsorship, or approval of Under Armour’s goods.

37. Plaintiffs will seek to amend the Complaint to add the ’080 LIGHTS OUT Mark once it registers, and will be seeking damages for the entire period of infringement.

38. Under Armour’s use of the LIGHTS OUT Marks is willful and was done with knowledge that such use would or was likely to cause confusion and deceive others, in that it has continued to use the LIGHTS OUT Marks following notification by Lights Out Holdings that its use has caused (and continues to cause) actual consumer confusion.

39. As a direct and proximate result of Under Armour’s trademark infringement, Lights Out Holdings has been damaged and will continue to be damaged in an amount to be determined at trial.

40. Under Armour’s use constitutes a counterfeit, which was willfully used, and thus Lights Out Holdings is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117.

41. Lights Out Holdings is further entitled to disgorge Under Armour’s profits for its willful sales and unjust enrichment.

42. This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Under Armour's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lights Out Holdings to its attorney's fees and a trebling of its damages.

43. As a direct and proximate consequence of the infringement complained of herein, Lights Out Holdings has been irreparably harmed to an extent not yet determined, and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Under Armour from committing further acts of infringement.

**SECOND CAUSE OF ACTION**

**UNFAIR COMPETITION**

**(Lights Out Holdings Against Defendant)**

**(15 U.S.C. §§ 1125(a) (Lanham Act § 43(a))**

44. Plaintiffs restate and reallege the Paragraphs herein as if set forth fully herein.

45. Lights Out Holdings owns the '212 LIGHTS OUT Mark, which is a federally registered, incontestable, valid, distinctive, and protectable trademark. Lights Out Holdings has priority of use over the '212 LIGHTS OUT Mark as to Under Armour.

46. Lights Out Holdings owns the '916 LIGHTS OUT Mark, which is a federally registered, valid, distinctive, and protectable trademark. Lights Out Holdings has priority of use over the '916 LIGHTS OUT Mark as to Under Armour.

47. Lights Out Holdings owns the '080 LIGHTS OUT Application Mark, for which it has applied for a federal registration.

48. Under Armour has, willfully and consciously, committed trademark infringement by using in commerce one or more marks or product names that are confusingly similar to the '212 LIGHTS OUT Mark and the '916 LIGHTS OUT Mark on or in connection with the sale of goods, in a way that is likely to cause

confusion, mistake, or deception as to whether Under Armour has a connection with Plaintiffs, or as to the origin, sponsorship, or approval of Under Armour's goods.

49. Plaintiffs will seek to amend the Complaint to add the '080 LIGHTS OUT Mark once it registers, and will be seeking damages for the entire period of infringement.

50. Defendant's acts of infringement have caused and will continue to cause damage to Lights Out Holdings, in an amount to be determined at trial.

51. As a direct and proximate consequence of the infringement complained of herein, Lights Out Holdings has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Under Armour from committing further acts of infringement.

**<u>THIRD CAUSE OF ACTION</u>**

**Cal. B&P 17200 *et seq.* AND COMMON LAW UNFAIR COMPETITION**

**(Plaintiffs Against Defendant)**

52. Plaintiffs restate and reallege the Paragraphs herein as if set forth fully herein.

53. Each of Under Armour's acts of trademark infringement harms Plaintiffs and constitutes unlawful, unfair, or fraudulent business acts or practices, unfair, deceptive, untrue, or misleading advertising, and/or false advertising within the meaning of Section 17200 *et seq.* of the California Business and Professions Code and under the common law.

54. In advertising its goods, Under Armour misrepresented the character of its business by suggesting a connection with the LIGHTS OUT Marks and Mr. Merriman.

55. Under Armour has engaged in these activities willfully and consciously.

56. Under Armour's activities have caused and will continue to cause damage to Plaintiffs, in an amount to be determined at trial.

57. As a direct and proximate consequence of the infringement complained of herein, Plaintiffs have been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Under Armour from committing further acts of infringement.

**FOURTH CAUSE OF ACTION**

**STATUTORY FALSE ENDORSEMENT**

**(Shawne Merriman Against Defendant)**

**(15.S.C. § 1125 *et seq.*; Cal. Civil Code § 3344; and Common Law)**

58. Plaintiffs restate and reallege the Paragraphs herein as if set forth fully herein.

59. Mr. Merriman is a publicly known professional sports athlete who enjoys nationwide celebrity status. Mr. Merriman's nickname "Lights Out" is a uniquely distinguishing characteristic of his celebrity persona.

60. Under Armour has used the LIGHTS OUT Marks or a confusingly similar variation of the LIGHTS OUT Marks in connection with the sale, offering for sale, distribution or advertising of goods and/or services. The LIGHTS OUT Marks are identical to Mr. Merriman's famous "Lights Out" nickname, are used on sports-related goods, are sold in an online retail store featuring sporting goods, are used to sell, advertise, and promote products and services endorsed by Mr. Merriman, and are marketed primarily to sports aficionados, and Under Armour's adoption was willful.

61. Through the use of the LIGHTS OUT Marks that are publicly associated with Mr. Merriman, Under Armour is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, sponsorship, endorsement, and approval of their Lights Out apparel and athletic shoe lines by Mr. Merriman.

62. Under Armour's use of the LIGHTS OUT Marks has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to

deceive consumers as to the affiliation, connection, association, origin, source, sponsorship, or approval of the Lights Out apparel and athletic shoe lines by Mr. Merriman; the marks used by Under Armour are identical or substantially similar in sound, appearance and meaning to Mr. Merriman's mark—his nickname "Lights Out."

63. Under Armour's acts constitute false endorsement and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) and the common law.

64. As a direct and proximate result of Under Armour's false endorsement Mr. Merriman has been damaged within the meaning of 15 U.S.C. § 1125 *et seq.* and the common law.

65. Under Armour's acts of advertising or selling, or soliciting purchases of products, merchandise, goods or services, using Mr. Merriman's likeness associated with his "Lights Out" nickname, without Mr. Merriman's consent, violate Mr. Merriman's right of publicity under California Civil Code § 3344.

66. Mr. Merriman has suffered damages in an amount to be established after proof at trial or in the statutory amount.

67. Mr. Merriman is further entitled to disgorge Under Armour's profits for its willful sales and unjust enrichment.

68. This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Under Armour's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Mr. Merriman to his attorney's fees and a trebling of his damages.

69. Mr. Merriman's remedy at law is not adequate to compensate for injuries inflicted by Under Armour. Thus, Mr. Merriman is entitled to temporary, preliminary and permanent injunctive relief.

**FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Plaintiffs Against Defendant)**

70. Plaintiffs restate and reallege the Paragraphs herein as if set forth fully herein.

71. Plaintiffs and Under Armour entered into a confidential Settlement Agreement on March 11, 2015.

72. The Settlement Agreement is valid and enforceable, and supported by adequate, mutual consideration.

73. Under Armour has breached the Settlement Agreement by continuing to sell merchandise bearing Plaintiffs' LIGHTS OUT Marks. Specifically, Paragraph 1 of the Settlement Agreement states that "Under Armour will cease all use of, and will not use or register in the future, the terms LIGHTS OUT as a trademark, service mark, or other source identifier to identify apparel products." As set forth herein, Defendant's advertising, marketing, and sale of its Curry 3 Lights Out Sneakers, the Hit the Lights Shirts, and use of the "Lights Out" game to advertise and promote said products, each constitute a separate breach of the Settlement Agreement.

74. Plaintiffs have performed each and every one of their material obligations under the Settlement Agreement, or are excused from any non-performance.

75. Defendant's breach of contract has caused and will continue to cause damage to Plaintiffs, in an amount to be determined at trial.

76. As a direct and proximate consequence of the breach of contract complained of herein, Plaintiffs have been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Under Armour from committing further acts in breach of the Settlement Agreement.

77. As such, Plaintiffs are entitled to a declaration that Under Armour breached the Settlement Agreement and are entitled to damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs LIGHTS OUT HOLDINGS, LLC and SHAWNE MERRIMAN demand the following relief for each cause of action:

1. A judgment in favor of Lights Out Holdings and against Under Armour on the first, second, third, and fifth causes of action;

2. A judgment in favor of Mr. Merriman and against Under Armour on the third, fourth and fifth causes of action;

2. A permanent injunction against Under Armour's illicit activities;

3. Damages in an amount to be determined at trial;

4. Under Armour's unjust enrichment and/or disgorgement of Under Armour's profits;

5. Trebling of damages for willful infringement, unfair competition and dilution;

6. Exemplary and punitive damages (except as to relief for Cal. B&P 17200 *et seq*.);

7. Pre-judgment interest at the legally allowable rate on all amounts owed;

8. Statutory damages of up to $2 million per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117(c) for infringement of a registered mark, including by use of a counterfeit mark;

9. Statutory damages under California Civil Code § 3344;

10. Costs and expenses;

11. Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) *et seq*. as an exceptional case;

12. Restitution; and

13. Such other and further relief as this Court may deem just and proper.

Dated: February1, 2017

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By /s/ *Andrew D. Skale*

Andrew D. Skale
Wynter L. Deagle
Attorneys for Plaintiffs
LIGHTS OUT HOLDINGS, LLC and SHAWNE MERRIMAN

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all issues that are so triable.

Dated: February 1, 2017

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By /s/ *Andrew D. Skale*
Andrew D. Skale
Wynter L. Deagle
Attorneys for Plaintiffs
LIGHTS OUT HOLDINGS, LLC and SHAWNE MERRIMAN